**Michael L. SCOTT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–05–00124–CR.**

Court of Appeals of Texas, Texarkana.

Submitted June 23, 2006.

Decided Aug. 30, 2006.

Discretionary Review Refused Dec. 13, 2006.

Tim Cone, Gilmer, for appellant.

Timothy Cariker, Asst. Dist. Atty., Mike Fetter, Dist. Atty., Gilmer, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Michael L. Scott was found guilty by a jury of indecency with a child by contact. *See* TEX. PEN.CODE ANN. § 21.11(a)(1) (Vernon 2003). The jury assessed punishment at seven years' imprisonment. Scott appeals, challenging the sufficiency of the evidence to support his conviction and the trial court's refusal to include a charge on assault by offensive or provocative contact. We affirm.

### SUFFICIENCY OF THE EVIDENCE

Scott was convicted of indecency with his stepdaughter, A.H., eleven years old at the time Scott last touched her. The jury heard A.H.'s initial interview at the Children's Advocacy Center and her trial testimony. Michelle Scott, A.H.'s mother and Scott's estranged wife, testified as well. The jury considered Scott's videotaped statement to Robert Cromley, an investigator with the sheriff's department, and Scott's own testimony, along with that of his sons. The State also presented the testimony of a nurse practitioner.

*Indecency with a Child*

A person commits an offense if, with a child younger than seventeen years and not the person's spouse, the person engages in sexual contact with the child or causes the child to engage in sexual contact. *See* TEX. PEN.CODE ANN. § 21.11(a)(1). "Sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

(1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or

(2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

TEX. PEN.CODE ANN. § 21.11(c) (Vernon 2003). A person acts intentionally with respect to the nature of the conduct or a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result. TEX. PEN.CODE ANN. § 6.03(a) (Vernon 2003). The offense of indecency with a child requires proof of the accused's intent to engage in the proscribed contact, rather than intent to bring about a particular result. *Rodriguez v. State*, 24 S.W.3d 499, 502 (Tex.App.-Corpus Christi 2000, pet. ref'd).

*Standards of Review*

In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We are to view the relevant evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000). We must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App.1999).

In a factual sufficiency review, the appellate court views all the evidence in a neutral light and determines whether the evidence supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt, or if evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Threadgill v. State,* 146 S.W.3d 654, 664 (Tex.Crim.App.2004) (citing *Zuniga v. State,* 144 S.W.3d 477, 486 (Tex.Crim.App.2004)).

■ The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault or indecency with a child. *See* TEX.CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *Perez v. State,* 113 S.W.3d 819, 838 (Tex.App.-Austin 2003, pet. ref'd); *Tear v. State,* 74 S.W.3d 555, 560 (Tex.App.-Dallas 2002, pet. ref'd).

*Intent to Arouse or Gratify*

■ Scott maintains that he touched A.H.'s vagina only to apply the medicated cream to her chronic vaginal rash. From this, we read Scott's contention as one challenging the evidence to support the jury's finding of the intent element of the offense. The essence of this part of his argument is that there is no evidence Scott made contact with A.H.'s genitals or breasts "with intent to arouse or gratify [his] sexual desire."

■ Rarely will there be direct evidence of what an accused intended at the time of the incident. Thus, the fact-finder usually must infer intent from circumstan-tial evidence rather than direct proof. *See Hernandez v. State,* 819 S.W.2d 806, 810 (Tex.Crim.App.1991). More specifically, in the context of indecency with a child, the fact-finder can infer the requisite intent to arouse or gratify the sexual desire from conduct, remarks, or all the surrounding circumstances. *See McKenzie v. State,* 617 S.W.2d 211, 216 (Tex.Crim.App. [Panel Op.] 1981). The intent to arouse or gratify may be inferred from conduct alone. *Id.* No oral expression of intent or visible evidence of sexual arousal is necessary. *Gregory v. State,* 56 S.W.3d 164, 171 (Tex. App.-Houston [14th Dist.] 2001, pet. dism'd).

Here, the State presented evidence from Mary McKenzie, a family nurse practitioner, that a child should be able to apply over-the-counter medication between the ages of five and eight and apply prescription medication between ages eight and nine. She explained that the child may have to be shown how to do it at first and may have to be reminded when to do it. Michelle [1] testified that the chronic rashes were related to ringworm and that she taught A.H. how to apply the medication when A.H. was between five and seven years old. Similarly, A.H. testified that her mother taught her how to apply the cream when she was seven. A.H. explained that Scott had refused to let her put the medication on herself. A.H. further testified that Scott would put his hand down her pants and move his fingers around at times when no medication was involved. Scott testified that A.H. was ten or eleven years old when he last applied the medication.

The jury could have found the requisite intent in A.H.'s testimony regarding times when Scott touched her privates unrelated to application of medication. Also, from

---

1. We refer to Michelle Scott by her first name to distinguish her from Michael L. Scott.

the evidence that Scott applied the medication when A.H. was ten or eleven and able to apply it herself, the jury could infer that Scott rubbed the cream on A.H.'s vagina with the intent to arouse or gratify himself. In light of A.H.'s age and the evidence that she was able to apply the medication herself, there is sufficient evidence from which the jury could infer that Scott acted with the requisite intent.

Looking at surrounding circumstances in evidence, we point out that the jury also could have inferred the requisite intent from A.H.'s testimony that Scott also reached under her shirt to touch her breasts. *See Fetterolf v. State*, 782 S.W.2d 927, 933 (Tex.App.-Houston [14th Dist.] 1989, pet. ref'd) (requisite intent to arouse found from defendant's touching sleeping child's breast). The jury also could have determined that Scott acted with the requisite intent from his own testimony that, on one occasion, he pinched A.H.'s breast in a joking manner, teasing her about her development. While Scott maintains that he did so in a joking manner, the jury could have equated Scott's interest in his stepdaughter's developing body with an indication of his sexual intent in touching her genital area long after she was able to apply the medication herself.

Viewing the evidence in a light most favorable to the verdict, we conclude that the evidence is legally sufficient to support the jury's verdict. Scott's videotaped statement and testimony denying there was any sexual nature to the application of the cream or the breast-pinching is evidence contrary to the jury's verdict. However, reconciliation of the conflict between Scott's testimony and other evidence in the record is a duty left to the jury. Based on a neutral review of the record before us, we cannot say that the State's evidence was too weak to support a finding of guilt beyond a reasonable doubt. Nor can we

conclude that Scott's testimony constitutes evidence so strong that the State could not have met its burden of proving each element of the offense beyond a reasonable doubt. Accordingly, we find that the record contains legally and factually sufficient evidence from which the jury could conclude that Scott touched A.H.'s genitals and breasts with the specific intent to arouse and gratify his sexual desire. We overrule Scott's first and second points of error.

*Failure to Use the Term "Genitals"*

■ Scott also challenges the sufficiency of the evidence on the basis that A.H. never used the term "genitals" when she described the events. Instead, he points out, A.H. used the term "private areas." Since the State alleged that Scott made contact with A.H.'s genitals, Scott argues, A.H.'s failure to use that term renders the evidence legally and factually insufficient to support his conviction.

Scott's position does not find support in caselaw. He points us to no case—and we cannot find one—in which the child victim's failure to use the term specified in the indictment rendered the evidence insufficient to support the conviction. To the contrary, the evidence has been held sufficient when a child victim testified that the defendant put his hand inside her panties and on her private part. *See Billy v. State*, 77 S.W.3d 427, 429 (Tex.App.-Dallas 2002, pet. ref'd). Billy challenged the legal sufficiency of the evidence, although not specifically in terms of the language the victim used to describe the events. Even though the indictment referred to touching a part of the victim's genitals, the Dallas court concluded that the evidence was legally sufficient to sustain the conviction for indecency with a child. *Id.* at 428–29.

Scott points to *Bryant v. State*, 685 S.W.2d 472 (Tex.App.-Fort Worth 1985,

pet. ref'd), for instructive purposes. In *Bryant*, the child victim testified that Bryant had put his hand in her underpants and touched her "down between [her] legs." *Id.* at 474. The State alleged that Bryant had touched the victim's vagina and challenged the sufficiency of the evidence when the victim failed to specifically identify the body part touched. *Id.* Relying on the reasoning in *Tyra v. State*, 534 S.W.2d 695, 696–97 (Tex.Crim.App.1976), *overruled on other grounds by Cooper v. State*, 631 S.W.2d 508, 514 (Tex.Crim.App. 1982), and pointing out that courts have considered a child victim's inability to use technical terms to accurately describe his or her body, the Fort Worth court concluded that the victim's testimony sufficiently identified the body part. *Bryant*, 685 S.W.2d at 474 (citing *Clark v. State*, 558 S.W.2d 887, 889 (Tex.Crim.App.1977)).

Like the victim in *Bryant*, A.H. testified in somewhat general terms when specifically asked where Scott touched her, using the term "private areas." However, she also continued to explain that Scott touched her inside her pants. So, consistent with *Tyra* and *Bryant*, we conclude A.H.'s use of the term "private areas" and her failure to use the technical term "genitals" does not render the evidence legally or factually insufficient.

Further, Scott's position ignores the rest of the record. The record clarifies any confusion arguably caused by A.H.'s use of the term "private areas." For instance, in Scott's videotaped statement, he explained in great detail where he applied the medicated cream. It is abundantly clear he was referring to female genitalia. Further, in his own testimony, we see that the contact at issue relates to the touching in connection with the application of medicated cream to treat A.H.'s vaginal rashes. Michelle's testimony also lends itself to this conclusion by making clear that A.H.

suffered from vaginal rashes for which she had to have the medication. The record makes clear that the "private areas" means genital area.

*Evidence Going to the Credibility and Character of A.H.'s Mother*

Scott also contends the credibility and character of Michelle, A.H.'s mother, undermines the verdict so much that it renders the evidence insufficient. Specifically, Scott points to the animosity between Michelle and Scott, Michelle's desire to keep their son away from Scott, A.H.'s desire to please her manipulative mother, Michelle's prior felony conviction for sexual performance of a child, and her continued questionable sexual behavior while on community supervision.

■ While Scott points us to considerable impeachment evidence, we are not the judges of credibility. That determination belongs to the jury, and we must not substantially intrude on the jury's role as the sole judge of the weight and credibility of witness testimony. *See Wesbrook v. State*, 29 S.W.3d 103, 112 (Tex.Crim.App.2000); *Perez*, 113 S.W.3d at 837. We add that Michelle's is not the only testimony that supports the conviction. The jury may have discounted Michelle's testimony and concentrated on A.H.'s account or Scott's own statement and testimony.

We simply cannot know the impact the impeachment evidence had on the jury's assessment of Michelle's credibility, and such a determination is not ours to make. *See Vasquez v. State*, 67 S.W.3d 229, 236 (Tex.Crim.App.2002). We therefore conclude that, despite the impeachment and character evidence Scott introduced to undermine Michelle's testimony, the evidence remains legally and factually sufficient to support the jury's verdict.

*Significance of the Length and Difficulty of Jury Deliberations*

Scott finally argues that the length and difficulty of the jury deliberations show that the evidence is legally and factually insufficient to support the jury's verdict. Scott points out that the jury initially indicated it was deadlocked, eleven to one. The trial court instructed the jury to continue deliberating. A short time later, the jury communicated by note "that further deliberations might result in a verdict" and requested to reconvene the next morning. The trial court excused the jury for the day. After two more hours of deliberation the next morning, the trial judge polled the jury to determine whether each juror believed continued deliberation would result in a verdict. After each juror answered affirmatively, the jury deliberated for about fifteen minutes more before arriving at its verdict.

We do not consider such observations in our review of the sufficiency of the evidence. Perhaps the jury did take a long time in arriving at a verdict. That is not to say, however, that it arrived at an incorrect verdict or one not supported by sufficient evidence. As the Austin court pointed out, such information is interesting, but irrelevant to our review of the evidence:

> Further, appellant notes that the jury did not have an "easy time" in making its decision; that the jury had a portion of the complainant's testimony read back; that twice the jury indicated that it was "hung," giving the numerical split; and that the trial court gave an "Allen" charge before a verdict was reached.... These factors are interesting, but they are not evidence to be considered under the appropriate standard of review.

*Perez*, 113 S.W.3d at 837. In fact, one could arrive at the conclusion that the length of deliberations shows thoughtful consideration of the evidence presented and that such consideration, in turn, lends itself to correctness of the verdict. Simply put, the time the jury takes in arriving at its verdict could be said to support either party's position. Because the length of deliberations lends nothing to our assessment of the evidence, we conclude that such information does not affect our conclusion that legally and factually sufficient evidence supports the verdict.

## JURY CHARGE

Scott contends the trial court erred by refusing to include in the jury charge an instruction on assault. He argues that assault by offensive or provocative contact is a lesser-included offense of indecency with a child by contact. *See* TEX. PEN.CODE ANN. §§ 21.11(a)(1), 22.01(a)(3) (Vernon Supp.2006).

*Lesser–Included Offenses*

The trial court must submit a charge on a lesser-included offense if (1) the lesser-included offense is included within the proof necessary to establish the offense charged; and (2) some evidence exists in the record that, if the defendant is guilty, he or she is guilty of only the lesser offense. *See Hampton v. State*, 109 S.W.3d 437, 440 (Tex.Crim.App.2003); *Shea v. State*, 167 S.W.3d 98, 105–06 (Tex. App.-Waco 2005, pet. ref'd). Article 37.09 explains that a lesser offense is included within the proof necessary to establish the offense charged when:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

See TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981).

*Assault by Offensive Contact Compared with Indecency with Child by Contact*

Again, because the State charged Scott with the offense of indecency with a child by sexual contact, the State had to prove that Scott acted "with the intent to arouse or gratify the sexual desire of any person." See TEX. PEN.CODE ANN. § 21.11(c). In contrast, a person commits the offense of assault by offensive or provocative contact when he or she "knows or should reasonably believe that the other will regard the contact as offensive or provocative." *See* TEX. PEN.CODE ANN. § 22.01(a)(3).

Here, therefore, the State had to prove Scott acted with intent to arouse or gratify the sexual desire of some person; it did not have to prove Scott knew or should have reasonably believed that A.H. would regard the contact as offensive or provocative. Even though there may be some evidence that is probative of both elements, they remain distinctive elements. *See Shea*, 167 S.W.3d at 106; *Ramos v. State*, 981 S.W.2d 700, 701 (Tex.App.-Houston [1st Dist.] 1998, no pet.). Put another way, a defendant may be found guilty of indecency with a child regardless of whether a complainant found the conduct offensive or provocative.

■ Based on our evaluation of the elements of each offense, we join the *Shea* and *Ramos* courts [2] in concluding that the proof required to establish assault by offensive or provocative contact is *different*, not less, than that required to prove indecency with a child by contact. That said, assault under Section 22.01(a)(3) is not a lesser-included offense of indecency with a child. *See* TEX.CODE CRIM. PROC. ANN. art. 37.09(1), (3); *Shea*, 167 S.W.3d at 106. We overrule Scott's contention.

CONCLUSION

Having found the evidence legally and factually sufficient, and having concluded that the trial court did not err by refusing to include assault by offensive or provocative contact as a lesser-included offense, we affirm the trial court's judgment.

**2.** We note that, in addition to *Shea*, several unpublished cases have relied on *Ramos* to specifically conclude that assault by offensive or provocative conduct was not a lesser-included offense of indecency with a child by sexual contact, and thus no instruction on lesser-included offenses was required. *Silber v. State*, No. 13–05–238–CR, 2006 WL 347167, 2006 Tex.App. LEXIS 1306 (Tex. App.-Corpus Christi Feb. 16, 2006, pet. ref'd) (mem.op.) (not designated for publication); *Green v. State*, No. 11–03–00159–CR, 2004 WL 2126750, 2004 Tex.App. LEXIS 8523 (Tex.App.-Eastland Sept. 23, 2004, no pet.) (not designated for publication); *Stafford v. State*, No. 2–02–477–CR, 2003 WL 22923034, 2003 Tex.App. LEXIS 10439 (Tex.App.-Fort Worth Dec. 11, 2003, pet. denied) (not designated for publication).